UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BROADCAST MUSIC, INC. et al.,

Plaintiffs,

**DECISION AND ORDER**
11-CV-588A

v.

GREECE LAND CO., INC. d/b/a
Paradise Gentlemen's Club and
JOY B. TSIRTSAKIS individually,

Defendants.

---

## I. INTRODUCTION

Pending before the Court is a motion by defendants Greece Land Co., Inc. and Joy B. Tsirtsakis to set aside a default judgment under Rule 60(b)(1) of the Federal Rules of Civil Procedure ("FRCP"). Specifically, defendants want to set aside the default judgment entered against them on October 14, 2011 (Dkt. No. 16), which awarded statutory damages for copyright infringement, along with attorney fees, costs, and interest, to plaintiffs Broadcast Music, Inc.; E.O. Smith Music; Welsh Witch Music; Combine Music Corp.; Fourteenth Hour Music, Inc.; and Springtime Music, Inc. Defendants deny all allegations against them and assert that they never intended to default. Plaintiffs respond that defendants have admitted to receiving the motion for default judgment and not acting on it. Additionally, counsel for plaintiffs asserts that defendants' outgoing counsel told

him explicitly that defendants decided to take no further action in the case, even if that meant that a default would occur.

The Court has deemed the motion submitted on papers pursuant to FRCP 78(b). For the reasons below, the Court denies the motion.

## II. BACKGROUND

This case concerns allegations of copyright infringement. Plaintiffs are music companies that own copyrights to songs and that grant licensing rights for those songs. Defendants operate a strip club in the City of Salamanca, New York. The strip club plays music during its business hours.

On July 14, 2011, plaintiffs filed a complaint accusing defendants of playing their copyrighted songs without prior authorization. On July 29, 2011, plaintiffs filed affidavits of service of the complaint (Dkt. Nos. 7, 8) on defendants. Through two stipulations that the Court endorsed (Dkt. Nos. 9–12), defendants had until September 21, 2011 to answer or otherwise to respond to the complaint. Despite the stipulations, defendants never answered or filed any motions in lieu of answering. On September 26, 2011, plaintiffs requested an entry of default. On September 27, 2011, the Clerk of the Court filed an entry of default against defendants.

On October 7, 2011, plaintiffs filed a motion for default judgment seeking $12,000 in statutory damages for the alleged copyright infringements, $5,898 in attorney fees and costs, and interest. The motion papers included an affirmation

of Paul Knipler, a Senior Director of Business Affairs for plaintiff Broadcast Music, Inc. Mr. Knipler's affidavit ran 43 pages including attachments. In his affirmation, Mr. Knipler asserted that plaintiffs wrote to defendants at least 16 times, and called them or spoke to them personally at least 40 times, to try to persuade them to stop using plaintiffs' music without permission. The attachments to Mr. Knipler's affidavit included copies of 23 letters from plaintiffs to defendants about the alleged copyright infringement. Defendants did not respond to any of these letters and never attempted to set up a licensing agreement. The attachments also included a detailed, minute-by-minute report of songs that plaintiffs observed defendants playing on February 5, 2011 without authorization. Critically, plaintiff's motion papers include an affidavit by their counsel, Paul Perlman, containing the statement that "[o]n September 22, 2011, Defendants' counsel advised me in a telephone call that Defendants would not be filing an Answer and that Defendants instructed him to take no further action in this case." (Dkt. No. 15-1 at 5 ¶10.) This statement is critical because defendants have since acknowledged that they "received papers indicating that plaintiffs had moved for a default judgment" (Dkt. No. 19 at 2 ¶ 3) but never challenged the statement.

On October 14, 2011, the Court granted the motion and issued an Order of Default Judgment that was entered that day. The default judgment awarded plaintiffs $12,000 in statutory damages, $5,898 in attorney fees and costs, and interest.

One month later, on November 14, 2011, defendants filed the pending motion to set aside the default judgment. In support of their motion, defendants assert that they never intended to default and that they had tried to settle the matter without resorting to litigation. When the matter did not settle, defendants allegedly "believed that an answer would be interposed" within the appropriate time. (Dkt. No. 19 at 2 ¶ 3.) Defendants contend further that "the default was caused by mistake and/or inadvertence occasioned during the change of counsel as we geared up to litigate the issues." (*Id.* ¶ 4.)[1] Defendants deny the allegations in the complaint and believe that plaintiffs have failed to set forth sufficient facts to justify liability and any award of attorney fees. Plaintiffs counter by pointing to defendants' admission that they received the motion for default judgment. Additionally, as noted above, plaintiffs emphasize that the motion for default judgment contained an explicit factual assertion that defendants decided to default on the case. That assertion drew no response from defendants until after entry of default judgment.

---

[1] Although the docket contains the identities of their prior and current counsel, defendants have provided no information to help the Court understand defendants' relationship with prior counsel, why a change of counsel occurred, or how the answer deadline passed without any filings. *Cf. U.S. v. Cirami*, 535 F.2d 736, 739 (2d Cir. 1976) ("We have been provided with no affidavit of [prior counsel] which would cast any light on the circumstances of his failure . . . . Neither have we received any affidavits from present counsel of [defendants] which would indicate what efforts, if any, have been made to elicit [prior counsel's] testimony, either voluntarily or under subpoena . . . . On the record before us we are totally uninformed of the reasons for the failure . . . or whether the failure was deliberate or inadvertent.").

## III. DISCUSSION

"A district court may set aside an entry of default for good cause pursuant to Federal Rule of Civil Procedure 55(c), and may set aside a default judgment pursuant to Rule 60(b). The Second Circuit has expressed on numerous occasions its preference that litigation disputes be resolved on the merits, not by default. Accordingly, in considering a motion to vacate a default judgment, all doubts should be resolved in favor of those seeking relief under Rules 55(c) and 60(b)." *Cirigliano v. Village of Afton*, No. 3:09–CV–0298, 2011 WL 4566403, at *2 (N.D.N.Y. Sept. 29, 2011) (internal quotation marks and citations omitted). "[W]e have established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment. These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (citations omitted).

From the papers that defendants have submitted, the first and third factors from *Enron* present the most immediate concern. With respect to the first factor, defendants have asserted belatedly that they never "intended" to default but have submitted no information directly addressing the allegation that they instructed their former counsel to take no further action in the case. "[W]e have refused to vacate a judgment where the moving party had apparently made a strategic

decision to default." *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60–61 (2d Cir. 1996) (citations omitted). Additionally, defendants have admitted receiving the motion papers when filed, implying that they were aware of the allegation that they instructed their former counsel to let the case go into default. Given how incendiary such an allegation would be if fabricated, defendants would have reacted strongly and promptly if, in fact, it were fabricated. By choosing not to react at all until after the default judgment occurred, defendants have given this Court reason to credit plaintiffs' allegation and to discount their statement of intent as an after-the-fact rationalization. The Court thus concludes that the default in this case was willful.

As for the third *Enron* factor, defendants have presented only a denial of the allegations in the complaint. "A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense. The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron*, 10 F.3d at 98 (citations omitted); *accord State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004) (citing *Enron*). Here, defendants have submitted no alternative explanation for what plaintiffs have said that they observed on February 5, 2011. Defendants have set forth no affirmative defense that, if established during discovery, would relieve them of liability even if plaintiffs could

prove their allegations at trial. Only a denial of plaintiffs' allegations appears in the motion papers. A The only hint of a defense is the allegation that default occurred because of mistake or inadvertence. The Court, however, will not disturb a judgment because defendants failed to keep abreast of a lawsuit—and a default judgment motion—that they knew were ongoing. *Cf. SEC v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998) ("Normally, the conduct of an attorney is imputed to his client, for allowing a party to evade the consequences of the acts or omissions of [ ]his freely selected agent would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent. Thus, in the context of a default judgment, we ha[ve] rather consistently refused to relieve a client of the burdens of a final judgment entered against him due to the mistake or omission of his attorney.") (alterations in the original) (internal quotation marks and citations omitted).

Under the circumstances of a willful default and an absence of a potentially meritorious defense, vacating the default judgment in this case is unwarranted.

## IV. CONCLUSION

For all of the foregoing reasons, the Court denies defendants' motion to set aside the default judgment (Dkt. Nos. 18, 19).

SO ORDERED.

*s/ Richard J. Arcara*

HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: December 22, 2011